UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO: 09-30007-MAP

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | **MOTION AND MEMORANDUM TO** |
| v. ) | **DISMISS THE INDICTMENTS WITH** |
| ) | **PREJUDICE DUE TO THE IMPAIRED** |
| JIMMY ROMAN ROSARIO ) | **INTEGRITY OF THE GRAND JURY** |
| ) | |

## INTRODUCTION

Pursuant to Fed. R. Crim. P. 6, 12, & 47, the Defendant, Jimmy Roman Rosario ("Mr. Roman"), moves the court to issue an order dismissing the above captioned indictment on the grounds that the federal prosecutor committed misconduct before the grand jury by knowingly presenting the false testimony of Trooper Pablo Diaz ("Diaz") regarding a fictitious surveillance such that the grand jury's integrity was impaired to the prejudice of the Defendant. See Bank of Nova Scotia v. United States, 487 U.S. 250, 253 & 256 (1988); United States v. Williams, 504 U.S. 36, 46 (1992).

## FACTS

On April 13, 2009, Mr. Roman was arraigned in this Court on the above captioned indictment. The case stems from a search warrant execution conducted on August 17, 2006, at 50 Putnam Circle, Springfield, MA, pursuant to a search warrant that issued upon the affidavit of Trooper Daniel Soto ("Soto"). Mr.

1

Roman's case began in Hampden County Superior Court. In the Superior Court a four (4) day evidentiary hearing was conducted pursuant to Franks v. Delaware, 438 U.S. 154 (1978), upon a successful preliminary showing that the affidavit contained intentional falsehoods and material omissions. Among the contested issues was an allegation contained in paragraph six (¶6) of Soto's affidavit that one Eugenio Negron ("Negron") traveled a large geographic area from Holyoke to Springfield and back, while making periodic stops, in a short period of time. In effort to satisfy his burden under Franks, Mr. Roman, through counsel, subpoenaed Diaz to give testimony before the state court. Although served, Diaz failed to appear.(Exhibit G of paper 89/5).

At the conclusion of the four (4) day evidentiary hearing, the Superior Court, on January 29, 2009, found as a fact that neither the trip nor the alleged surveillance occurred. The Motion Judge referred to both as a fiction. Nevertheless, in support of the current federal indictment, the prosecution presented Trooper Pablo Diaz to the federal grand jury on April 7, 2009[1], to give testimony regarding the fictitious surveillance.

---

[1] Copy of Trooper Diaz's April 7, 2009, grand jury testimony attached as Exhibit A.

All of Diaz's testimony is suspect given the timing of his testimony which followed the State Court's findings, evidencing a clear opportunity to "clean" up the narrative. Furthermore, Diaz's testimony is suspect given his prior failure to appear before the State Court despite lawful subpoena.

Not only is Diaz's grand jury testimony suspect, it is also not corroborated by prior testimony of officers who allegedly had knowledge of the events and circumstances of August 17, 2006. Diaz testified to the grand jury that he was directed to 74 Newton Street to maintain surveillance of Negron. (Exhibit B/11). While allegedly stationed at his surveillance position, Diaz testified that he received information that Negron would be traveling to an unknown area, and surveillance officers were directed to follow him to wherever he traveled. (Exhibit B/15,17).

Regarding the surveillance and Negron's course of travel, Diaz testified that Negron left 74 Newton Street at 5:30 p.m. and traveled one (1) mile on Commercial Street to the on-ramp of 391 southbound. (Exhibit B/19-20). According to Diaz, Negron then traveled south on route 391 to interstate 91 southbound. (Exhibit B/20). Diaz testified that Negron exited 91 onto East Columbus Ave in Springfield.( Exhibit B/20) From East Columbus, Negron traveled State Street to the State Street Tavern. (Exhibit B/20-22).  At the State Street Tavern, Negron exited

3

his vehicle, entered the tavern, and then re-entered his vehicle after a period of time now accompanied by a passenger, allegedly Mr. Roman. (Exhibit B/22). From the State Street Tavern, the pair traveled to 50 Putnam Circle. (Exhibit B/22-25). At 50 Putnam Circle, the passenger exited the vehicle and entered the location while Negron waited for another period of time until the passenger returned. (Exhibit B/26). Upon his return, the pair traveled back to the State Street Tavern where the passenger was dropped off. (Exhibit B/27). Negron last traveled back to Holyoke utilizing the same routes as before, 91 and 391. (Exhibit B/26-28).

Conspicuously absent from Diaz's testimony was any reference to the time it took to travel the alleged route while making the associated stops. In addition, Diaz testified that surveillance officers, including Holyoke Paul Barkyoumb ("Barkyoumb"), were in communication with one another via police radios and Nextel push-to-talk mobile devices. (Exhibit B/18). Copies of radio transmissions have never been produced and on May 18, 2010, the government advised that there were no records of push-to-talk transmissions on any surveillance officers' Nextel Devices[2].

The trip and surveillance that Diaz testified to was and remains a fiction. Furthermore, the U.S. Attorney who presented

---

[2] May 13, 2010, discovery letter attached as Exhibit B.

4

the testimony knew that it had been found a fiction, yet nevertheless chose to present the fictitious testimony anyway.

The entire trip is implausible. Barkyoumb, testified that Negron's trip took thirty (30) minutes to transpire. (Exhibit G to paper 89/21,28,38). However, Barkyoumb testified that it took between fifteen (15) and twenty (20) minutes just for Negron to travel from Holyoke to State Street Tavern. (Exhibit G to paper 89/37, 131). Barkyoumb then testified to an additional twenty-two (22) minutes it took to travel from the bar to Putnam Circle, back to the bar, and then to Holyoke. (Exhibit G to paper 89/42-46). Therefore, by Diaz's own fellow surveillance officer, the time it took to complete the fictitious trip exceeds the alleged time frame.

Mr. Roman's investigator, Richard Williams ("Williams") attempted to replicate the fictitious route within the thirty (30) minute time period. (Exhibit G to paper 89/214). He did three (3) separate time trials, one (1) during light traffic and two (2) during rush hour. For Williams to recreate the surveillance course , without accounting for the various stops, it required twenty-six (26) minutes one-way during light traffic and between thirty-eight (38)  and forty-two (42) minutes one way during rush hour traffic. (Exhibit G to paper 89/225).

Contrary to Diaz's testimony about the time surveillance commenced, Anthony Brach's official police report of Negron's

5

August 17, 2006, arrest states that surveillance was established at 6:00 p.m.[3] Barkyoumb attempted to clean up the discrepancy by testifying that there were two (2) surveillances of Newton Street, one at 5:30 p.m. and another at 6:00 p.m. (Exhibit G to paper 89/57). He further testified that the trip from Holyoke to Springfield and back took but thirty (30) minutes despite his inconsistent testimony of a forty-two (42) minute trip.

## ARGUMENT

The federal grand jury occupies a unique place in the American justice system. Sheldon v. United States District Court for the District of Rhode Island, 53 F.3d 1349, 1356 (1st Cir. 1995). The grand jury does not belong to the executive branch, rather it acts as a buffer or referee between the prosecutor and the people. Id. at 1356.

A District Court has the inherent power to control admission to its bar and to discipline attorneys who appear before it. Id. Pursuant to it inherent authority, a federal court may regulate a prosecutor's conduct before the grand jury. Id. at 1357. In accordance with its inherent authority to regulate attorney conduct, as well as its supervisory powers, a District Court may dismiss an indictment upon a showing of prosecutorial misconduct before the grand jury impairing its traditional function to a Defendant's prejudice. Bank of Nova

---

[3] Copy of Brach's report attached as Exhibit C.

Scotia v. United States, 487 U.S. 250, 253 & 263 (1988); United States v. Williams, 504 U.S. 36, 46 (1992).

Prejudice is demonstrated by a showing that the misconduct before the grand jury substantially influenced the grand jury's decision to indict or where there is grave doubt that the decision to indict was not substantially free from the misconduct. Bank of Nova Scotia, 487 U.S. at 256 & 263. The knowing presentation of a prosecuting attorney of perjurious testimony to the grand jury to obtain an indictment is sufficient to warrant dismissal. United States v. Strouse, 286 F.3d 767 (5th Cir. 2002).

The knowing presentation of false testimony to the federal grand jury is precisely what occurred in Mr. Roman's case. Diaz's testimony before the grand jury, as outlined in the "FACTS" section *supra.,* was simply post-hoc embroidery to fashion a believable reality of the fictitious trip and surveillance. Neither the trip nor the surveillance happened. Diaz knew it and the U.S. Attorney knew it. Therefore it was prosecutorial misconduct to present the fictitious tale to the federal grand jury. The presentation impaired the grand jury's function to the defendant's prejudice. Therefore dismissal of the instant indictment with prejudice is required.

## CONCLUSION

For the forgoing reasons, the Defendant's Motion to Dismiss due to the Impaired Integrity of the Grand Jury must be allowed.

By His Attorney,

/s/Joseph F. Krowski, Sr., Esquire
JOSEPH F. KROWSKI, SR., ESQUIRE
LAW OFFICE OF JOSEPH F. KROWSKI
30 Cottage Street
Brockton, MA 02301
(508) 587-3701
BBO: 280540

Dated: July 27, 2010
m:cri\rosario.mtn.dismiss.dueprocess

## CERTIFICATE OF SERVICE

I, Joseph F. Krowski, Esquire, hereby certify that I have this 27th day of July, 2010, electronically filed with the U.S. District Court, Springfield, the above Defendant's Motion and Memorandum to Dismiss the Indictment due to the Impaired Integrity of the Grand Jury and have served a copy of same on Todd E. Newhouse, AUSA, 300 State Street, Springfield, MA and Syrie D. Fried, Esquire, 51 Sleeper St., 5th Floor, Boston, MA by means of the court's electronic court filing and notice system (PACER).

/s/ Joseph F. Krowski, Esquire