```
                UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MASSACHUSETTS
```

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | 09-CR-30007-MAP |
| | ) | |
| **JIMMY ROMAN ROSARIO,** | ) | |
|     Defendant | ) | |

<u>**MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS DUE TO
IMPAIRED INTEGRITY OF THE GRAND JURY**</u>
(Dkt. No. 91)

October 26, 2010

**PONSOR, D.J.**

On April 7, 2009, a federal grand jury returned an indictment against Defendant charging him with possession with intent to distribute more than five kilograms of powdered cocaine. At the same time, the government filed an Information pursuant to 21 U.S.C. § 851(a)(1) identifying two prior convictions, from 1998 and 1992, for serious drug offenses. The Information raises Defendant's mandatory minimum sentence to life imprisonment without possibility of parole, if he is convicted.

Defendant has moved to dismiss the indictment on the ground that the government knowingly presented false information to the grand jury. Because there is no support whatsoever for this claim, and not a scintilla of evidence suggesting misconduct of any kind by the Assistant U.S.

Attorneys handling this case, the motion will be denied.[1]

Defendant's argument is rooted in a somewhat complicated state court proceeding that unfolded prior to Defendant's federal court indictment. In the earlier state Superior Court prosecution Defendant was charged with possession with intent to distribute cocaine, based on the same evidence -- over seventeen kilograms of powdered cocaine seized from Defendant's residence -- now at the heart of this federal case. State law enforcement agents seized the cocaine during a search conducted on August 17, 2006 pursuant to a search warrant obtained upon the affidavit of a Massachusetts State Police trooper named Daniel Soto.

Trooper Soto stated in his affidavit that on August 17, 2006 a team of law enforcement agents had set up the arrest of a Holyoke, Massachusetts drug dealer, Eugenio Negron, who had made sales of crack cocaine to a cooperating witness. On the day of the planned arrest, according to the affidavit, the arrest team had listened while the cooperator set up the purchase and heard Negron say he needed to go get the drugs. According to the affidavit, officers then tailed Negron as he

---

[1] To his credit, defense counsel conceded his over-zealousness and recognized the lack of factual and legal support for this motion at oral argument, offering to withdraw it. The court prefers to deny the motion outright in order to memorialize its agreement with defense counsel's assessment: the AUSA was well within bounds and engaged in no misconduct whatsoever.

picked up Defendant at a local bar in Springfield (a city south of Holyoke), went with him to his residence, waited for the Defendant to retrieve the drugs, dropped him off back at the bar, and proceeded back to the agreed-upon location on Essex Street in Holyoke to make the sale, where he was arrested. Once Negron was in custody and found with some fifty grams of crack cocaine -- again, according to the affidavit -- he immediately agreed to cooperate, identifying Defendant as the source of his drugs and Defendant's residence as a location where more drugs would be found. Issuance of a warrant to search Defendant's residence on Putnam Circle in Springfield followed, and the seventeen kilos of cocaine were discovered.

Shortly after the state court prosecution commenced, defense counsel moved to suppress the cocaine, based at least in part on alleged misrepresentations and omissions in the Soto affidavit. The state Superior Court Judge took evidence relevant to the motion over several days. According to state court defense counsel (who, along with the Federal Public Defender, currently represents Defendant in this court), the Commonwealth's Assistant District Attorney badly botched the state's case during the suppression hearing. Documents the defense was entitled to came late or not at all. Witnesses failed to appear in response to defense subpoenas, despite

orders from the Superior Court Judge that they be produced.

Ultimately, the state court judge allowed the motion to suppress, finding that certain portions of the Soto affidavit were fabricated. In particular, the state court judge found that Trooper Soto's description of the surveillance of Negron during his trip to Springfield, allegedly to retrieve the crack cocaine, was "a fiction." (See Dkt. 76, Ex. 3, at 10.) Significantly, the suppression ruling was based on state law, which, the Superior Court Judge found, required, or might require (the state law is not perfectly clear) that the fruits of a search be suppressed where deliberate falsehoods are discovered in the warrant affidavit, even where the falsehoods were not essential to the probable cause finding. Federal law, the judge correctly observed, is not so stringent, requiring only that probable cause be supported if the alleged falsehoods are excised and disregarded. See Franks v. Delaware, 438 U.S. 154, 156 (1978); U.S. v. Cartagena, 593 F.3d 104, 112 (1st Cir. 2010). Under the less strict Fourth Amendment standard, the state judge observed, the affidavit would have been sufficient to satisfy the Fourth Amendment. (See Dkt. 76, Ex. 3, at 14-15.)

The Assistant District Attorney in state court, having received an adverse ruling, moved to reconsider, finally agreeing to supply the witnesses that the defense and the

4

court had been waiting for during the original hearing.  The state court judge, understandably unwilling to countenance this sort of eleventh-hour gymnastics, denied reconsideration.

Following the allowance of the suppression motion in state court, Defendant was re-indicted in federal court, and the state court prosecution was dismissed.  It is only fair to observe that both the state law enforcement officers and now the federal prosecutors respectfully but vehemently disagree with the Superior Court ruling regarding the falsity of the search warrant affidavit, and they challenge the correctness of the state suppression ruling.  Nevertheless, in presenting the evidence to the grand jury to obtain the indictment in federal court, the Assistant U.S. Attorney forthrightly disclosed to the grand jury the state court judge's adverse ruling.  He also placed before the grand jurors evidence, and at least one witness, that the state prosecutor never made available to the Superior Court Judge.  Based on its own independent assessment of the evidence, the federal grand jury returned the indictment now before the court.

The gist of Defendant's motion seems to be that the federal prosecutor engaged in deliberate misconduct and knowingly presented false evidence by offering testimony to the grand jury that contradicted, or was inconsistent with, the earlier finding of the Superior Court judge.  As defense

counsel now concedes, see note 1 supra, the decision to offer this testimony provides no basis for dismissal and is in no way improper.

For one thing, in the very rare instances where a motion to dismiss predicated on misconduct before the grand jury has been successful, the facts are not only more egregious but of an entirely different species. See, e.g., Guarino v. Metropolitan Life Ins. Co., 915 F. Supp. 435 (D. Mass. 1995) (granting dismissal of indictment where prosecutor stated to grand jurors that they only had to agree with critical parts of indictment, suggested that grand jury needed to return indictment quickly before statute of limitations expired, improperly characterized evidence, and gave doughnuts to grand jury); United States v. Brodson, 528 F.2d 214 (7th Cir. 1975) (upholding dismissal of indictment where government violated federal statute's wiretap provision by presenting to the grand jury evidence intercepted through wire communications which were not specified by the order of authorization or by the approval of the original wiretap).

Second, and equally important, the scenario played out in the state and federal courts around the events of August 17, 2006 and Defendant's arrest simply represents a strong

disagreement between the defense and the prosecution over a dense and conflicting fact pattern. An Assistant U.S. Attorney is allowed to disagree with a defense attorney, and even a judge, without suffering an accusation of deliberate misconduct. The law is clear that the submission of merely contested evidence before a grand jury by no means suggests any impropriety on the part of the government. Indeed, the Supreme Court has made clear that even where an Assistant U.S. Attorney has doubts about evidence submitted to the grand jury, "this is quite different from having knowledge of falsity." <u>Bank of Nova Scotia v. United States</u>, 487 U.S. 250, 255-56 (1988). Here, the Assistant U.S. Attorney has made it clear that, whatever the sentiments of the defense, he has no doubts about the accuracy of the evidence presented to the grand jury. The First Circuit likewise has held that uncertainty regarding the truth of a witness's statements is not sufficient to dismiss the indictment. <u>See,.e.g.</u>, <u>United States v. Ortiz de Jesus</u>, 230 F.3d 1, 4-5 (1st Cir. 2000) ; <u>U.S. v. Maceo</u>, 873 F.2d 1, 4 (1st Cir. 1989).

Recognizing that the government took no step anywhere close to any ethical boundary, and that the motion overreached, the court must express a note of sympathy with defense counsel. In state court, according to counsel, Defendant would apparently have faced a sentence of at most

7

seventeen years. Moreover, since the state penal system unlike the federal system permits parole, Defendant might have been released substantially sooner. As a result of counsel's vigorous and determined efforts on behalf of his client, and (at least according to defense counsel) the cavalier behavior of the state prosecutor, counsel succeeded in convincing the state court judge to suppress a very large quantity of illegal narcotics, virtually assuring his client's freedom. As his reward, counsel's client has been re-indicted in this court, where the standard for suppression is much more generous to the prosecution and where, much more gravely, Defendant now faces the possibility of spending the rest of his life in prison. Under these desperate, and painfully ironic, circumstances, diligent and honorable defense counsel can leave no pebble unturned, and mistakes can happen.

In conclusion, and at the risk of repetition, there is no evidence whatsoever that the Assistant U.S. Attorney in this case engaged in any type of misconduct or in any way attempted knowingly to present false evidence to the grand jury. Moreover, the evidence here is flatly insufficient to satisfy any legal standard supporting dismissal. For these reasons, Defendant's Motion to Dismiss (Dkt. No. 91) is hereby DENIED.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR

**United States District Judge**